VIRGINIA SIMMONS ET ALS. v. MATILDA S. DINSMORE.

(Case No. 1457.)

1. AGREEMENT BETWEEN PURCHASERS — SECRET TRUST — CONSTRUCTIVE NOTICE.— D. conveyed his headright league to R., who, however, claimed one-half, holding the other half in trust for D. H. having verbally agreed with D. to buy his half of the league, applied to R. and obtained from him an agreement to divide the land as soon as practicable, the agreement reciting, "Now we, the parties above named, having been purchasers of said land from said D." H., who had never paid D. for the one-half league, sold it by title bond to B., and the latter conveyed it to T. B., who procured an order from the probate court directing the executors of R. to convey to him all the interest of R.'s estate in the one-half league. This conveyance was made, and T. B. subsequently conveyed to plaintiff. *Held,*

(1) That the agreement between R. and H. passed no title.

(2) That the agreement shows on its face that H. only claimed through a purchase by R. and H. of D., and shows, therefore, that he was not a *bona fide* purchaser for value from R.

(3) That the decree, and the conveyance in obedience to it, being based on this agreement, the plaintiff's vendor, in whose chain of title these constituted a necessary link, was charged with notice that H. had only such right as was derived from D., and had none by purchase from R.

(4) That the heir of D. not having been a party to the proceeding in the probate court, was not affected thereby.

(5) That although the decree and conveyance vested the legal title in T. B., he held it in trust for D., unless he had acquired the equitable interest of D. or his heir.

(6) That a charge which assumed that there was a secret trust in regard to the land between H. R. and D. was erroneous. A sale by H. to D. was necessary to the existence of such a trust, and the fact of such a sale was an issue for the jury.

(7) At the time of the conveyance to plaintiff there was on record a conveyance from the heir of D. to one-half the league, under which defendants claimed. This was constructive notice to plaintiff.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*H. H. Boone,* for appellants.

*Preston & Smith* and *Chas. Stewart*, for appellee.

I. The charge complained of is not erroneous, and was required by the evidence which had been submitted to the jury, tending to show that Elisha Roberts held one-half of the land for Jesse Denson, and that J. W. Hutchins and A. B. Bacon had knowledge of such trust at the time they acquired their title; and further, because there was testimony before the jury to show that J. W. Hutchins claimed under Jesse Denson, by virtue of an executory contract which the parties had never executed.

II. The court having instructed the jury, "that, in actions of trespass to try title, it is incumbent upon the plaintiff to show title in himself, and until this be shown defendant in possession has the right to remain in possession," every link in plaintiffs' chain of title was submitted by this charge to the jury to investigate by the light of the testimony adduced on the trial, and the questions, whether J. W. Hutchins had in fact ever purchased and paid for the land in controversy from said Jesse Denson, and whether or not said Denson had claimed any interest in said land when Bacon bought from Hutchins, and whether A. B. Bacon had notice or was put upon inquiry as to any interest claimed by Jesse Denson at the time he purchased from J. W. Hutchins, were proper subjects of investigation by the jury, under the charge hereinbefore quoted, in connection with other portions of the charge given by the court, including the charge complained of in this assignment of error. If it be true that no secret trust was shown to exist between J. W. Hutchins and Jesse Denson, the fact that the charge complained of embraces such a statement could not have operated to the prejudice of plaintiff in error, as the matter was irrelevant, and could have had no tendency to distract or divert the attention of the jury from the true issue. Mills *v.* Ashe, 16 Tex., 304; Loper *v.* Robinson, 54 Tex., 516; G. H. & S. A. R'y Co. *v.* Delahunty, 53 Tex., 212. The

charge was not upon the weight of testimony, and was not an unauthorized invasion of, and an interference with, the province of the jury, but was an instruction to the jury as to the law arising on the facts.    See San Antonio v. Lewis, 9 Tex., 71; Hedgepeth v. Robertson, 18 Tex., 871, 872; Reid v. Reid, 11 Tex., 593; Wright v. Thompson, 14 Tex., 563; Mitchell v. DeWitt, 20 Tex., 299; Williams v. Davidson, 43 Tex., 39; Willis v. Bullitt, 22 Tex., 331; Brown v. State, 23 Tex., 201.

III.  The court did not err in telling the jury that the agreement between Elisha Roberts and J. W. Hutchins, dated March 11, 1839, to divide the Jesse Denson league, and the subsequent action of the probate court of San Augustine county, Texas, and the conveyance from the executors of Roberts to Thomas S. Bacon, from whom plaintiffs obtained title by deed dated January 10, 1870, placed the legal title to the land in controversy in plaintiff.

STAYTON, ASSOCIATE JUSTICE.— The land in controversy was originally granted to Jesse Denson, and the appellants claim title thereto through a regular chain of title from his son and only heir, said Denson having died in 1843.

The defendant in error claims to deraign title under Jesse Denson, but exhibited no written title from him, but claims through a written agreement between Elisha Roberts and J. W. Hutchins, dated March 11, 1839, which is as follows, in so far as it is necessary here to be stated: "Now we, the parties above stated, having been purchasers of said land for and in consideration of two dollars [the word 'thousand' seeming to have been written and erased before the word dollars], from said Denson, do hereby bind and obligate ourselves, our heirs and assigns, to divide said league of land into two equal halves as soon as practicable."

The league of land, one-half of which is in contro-

versy, was granted to Jesse Denson in 1831, and in 1834 he conveyed the same to Elisha Roberts by conveyance which did not recite any consideration; but the real consideration for the conveyance seems to have been the location and payment of the government dues on the land by Roberts. It is admitted that Elisha Roberts after that conveyance, for some reason which is not developed in the record, held one-half of the league in trust for Jesse Denson, who returned to Mississippi.

The agreement between Elisha Roberts and J. W. Hutchins, from which an extract is above copied, was offered in evidence by the defendant in error; and on the same paper upon which it was written, and apparently written by the same person who wrote said agreement, was written the following:

"RANKIN COUNTY, ⎱
"*State of Mississippi.* ⎰

"Know all men by these presents, that I, Jesse Denson, Sr., of the above county and state, do hereby ratify and forever confirm said agreement as above stated, made and entered into between Elisha Roberts and James W. Hutchins on the 11th day of March, 1839, for the division of one league of land, numbered (8) eight, granted to me by the Mexican government, at San Felipe de Austin, on the 4th day of May, 1831, and which land I did sell, transfer and quit-claim to Elisha Roberts, for and in consideration of the sum of two dollars to me in hand paid; and I do hereby bind myself, my heirs, etc., in this my ratification of said sale and said division, all as above mentioned."

This paper was not signed nor dated, and was offered in evidence by the plaintiffs in error.

There was evidence tending to show that Denson had refused to ratify the agreement between Roberts and Hutchins or to sign the paper attached thereto.

Hutchins testified that he made a verbal trade with

Denson for one-half of the league of land in 1836, conditioned that he would come to Texas, look at it, and, if he liked it, take it and pay Denson one dollar per acre therefor; that he came to Texas in 1839, bearing a letter from Denson to Roberts, instructing him to make to Hutchins a title to the land if upon examination he liked it; that Roberts refused to go with him to look at the land on account of danger from Indians, but agreed to divide the land at some future time, but refused to make him a title to the land; that Roberts was willing to agree about the division of the land, but said that after that was done Denson would have to make the title to him; that he never paid Denson for the land.

Hutchins stated that he came to Texas again in 1846 and called on Elisha Roberts, who then informed him that since his first visit he had receievd another letter from Denson, by which his former instructions to make title to him were countermanded, for the reason that Hutchins had not complied with his agreement to pay for the land.

The muniments of title relied upon by defendant in error, in addition to the agreement between Elisha Roberts and J. W. Hutchins, were as follows:

1st. Written agreement between J. W. Hutchins and A. B. Bacon, by which Hutchins agreed to cause to be conveyed to Bacon, within three months from January 20, 1849, in consideration of $1,750 acknowledged to have been paid, one-half of the Jesse Denson league; this recited that the league of land had been sold by Jesse Denson to Roberts and Hutchins, and stipulates that Hutchins is to "cause said Bacon, by proper assurance, to be secured in the full fee simple title to the same, as surveyed and divided, leaving the south half thereof clear of incumbrance."

2d. Deed from A. B. Bacon to Thomas S. Bacon, reciting a consideration of two thousand dollars.

3d. Petition of Thomas S. Bacon in probate court for San Augustine county against the executors of Elisha Roberts' estate, praying that they be directed to make title to him for the land in controversy, and as a basis for his right setting up the agreement between Elisha Roberts and J. W. Hutchins of date March 11, 1839, and the subsequent conveyances above named down to himself; upon which said court made a decree that the executors convey to Bacon all of the interest of Elisha Roberts' estate in the land in controversy, and further decreeing that Bacon was the legal owner of the interest of Hutchins under the agreement between him and Elisha Roberts. To this proceeding neither the heirs of Denson nor those holding under them were parties.

4th. Deed from the executors of Elisha Roberts to Bacon in accordance with the decree of the probate court.

5th. Deed from Thomas S. Bacon to defendant in error, dated May 10, 1870, reciting a consideration of one hundred dollars.

7th. Power of attorney from J. W. Hutchins to A. B. Bacon, empowering him to obtain title to half of the Jesse Denson league of land to himself from the executors of Elisha Roberts' estate, and also authorizing him to relinquish the right of Hutchins to Roberts' heirs for the other half, dated January 27, 1849.

The court charged the jury as follows: "If you are satisfied from the evidence that A. B. Bacon actually paid the consideration expressed in the title bond from J. W. Hutchins to A. B. Bacon, dated January 20, 1849, and that at the time of the execution of such title bond, or time of payment, he (Bacon) had no notice of any secret trust between said Hutchins and Elisha Roberts and Jesse Denson, then his (Bacon's) title was and is sufficient to entitle plaintiff to recover." This is assigned as error.

There being no controversy that Elisha Roberts held the title to one-half of the league of land in trust for Jesse Denson, in order to entitle the defendant in error to recover, it was incumbent upon her to show that she had acquired the interest of Jesse Denson in the league through a purchase from him, or that she had acquired title to the land through a purchase from Elisha Roberts for a valuable consideration and without notice of the right of Jesse Denson in the land.   The agreement between Elisha Roberts and J. W. Hutchins was not intended, from its terms, to pass title to the one-half of the league of land, but only to provide for the partition thereof; and it bears evidence upon its face that whatever title Hutchins then had or claimed was by and through a purchase which had been made by him and Roberts from Denson; hence it is unnecessary, no other agreement between Roberts and Hutchins being shown, to consider whether any purchase was made by Hutchins from Roberts under such circumstances as would make him a *bona fide* purchaser of the land.

The proceedings had in the probate court against the executors of Roberts' estate are based upon the agreement between Roberts and Hutchins, and have no higher source, so far as shown by the record, and can have no greater effect as against one claiming under conveyance from the heir of Denson, who was not made a party to that proceeding, than the instrument itself had, unless parties claiming under that proceeding, the apparent title having been in Elisha Roberts, could show themselves to be purchasers for value from him without notice of the equitable title of Denson to one-half of the land, which question will be hereafter considered.

No paper title from Denson to Hutchins having been shown, it was incumbent upon the defendant in error, in order to maintain her suit against one claiming under a deed from the heir of Denson, to show that Hutchins

had bought the land from Denson, and received a deed therefor, or that Hutchins had bought the land by verbal sale, had paid the price therefor, and such other facts as would have entitled Hutchins, in a suit against Denson or his heirs, to specific performance.

The charge assumed that there was a secret trust in regard to the land between Hutchins, Roberts and Denson.

The existence of such a trust could only arise between the three persons named, from a sale by Denson to Hutchins while the legal title was in Roberts, and it was error to assume that such a trust existed; for whether Hutchins had ever bought the land from Denson was the main question in issue in the case, and it should have been directly submitted to the jury, as the court was requested to do in the second charge asked by the plaintiffs in error, which was refused by the court.

The charge as given made the right of the defendant in error to depend on the fact that Bacon purchased from Hutchins and paid him for the land, without notice of something which could have no existence unless Hutchins had bought from Denson, *i. e.*, a secret trust between Hutchins, Roberts and Denson.

If it could be claimed that Hutchins claimed through a purchase from Roberts, without notice of Denson's rights, then the probate proceedings might be made the basis of title to defendant in error, if such proceedings did not show that the right therein asserted was claimed to have been derived by Hutchins from Denson; but the very agreement upon which the probate proceeding was based, put the parties upon notice that whatever right Hutchins had or claimed was derived from Denson and not from Roberts, and of this, it being a link in the chain of title of defendant in error, she stands charged with notice, as did all under whom she claimed. The decree in probate simply determined that T. S. Bacon was the

owner of whatever interest in the land Hutchins had under the agreement between him and Roberts, and directed the executors to convey to Bacon the interest which Roberts had in the southern half of the Denson league.

The court further charged the jury, "that the agreement between Elisha Roberts and J. W. Hutchins, dated March 11, 1839, to divide the Jesse Denson league, and the subsequent action of the probate court of San Jacinto county, Texas (which is in evidence), and the conveyance from the executors of Roberts to Thomas S. Bacon, from whom plaintiff obtained title by deed dated January 10, 1870, placed the legal title to the land in controversy in plaintiff." While it is true that the deed from the executors, made under the decree of the probate court, did have the effect of placing the legal title to one-half of the league in T. S. Bacon, under whom defendant in error claims, yet as the heir of Denson was not a party to that proceeding, unless Hutchins had acquired title from Denson, in trust for whom Roberts held one-half of the league, Bacon held the land in trust for Denson just as Roberts had before that time, and he and all persons holding under him are bound to show that they have acquired the equitable title of Denson; and neither the agreement between Roberts and Hutchins to divide the land nor the probate proceedings are sufficient to show that fact.

Although the effect of the probate proceeding and deed made thereunder was to place the legal title in T. S. Bacon, yet for the reasons stated in considering the former charge of the court, the defendant in error cannot claim to be a purchaser from Roberts, and therefore protected, but must go back of the agreement upon which they base their right and show that Hutchins bought from Denson.

If it appeared that the entire league was bought and paid for by Hutchins and Roberts from Denson, and that

the deed was made to Roberts alone, then the agreement between Roberts and Hutchins, and the proceedings and deed made thereunder, would have placed both the legal and equitable title to one-half of the league in T. S. Bacon, under whom defendant in error claims; but there is no pretense that such was the case.

It is claimed that there was no error in giving the charges hereinbefore considered, or that if so, the same worked no injury to the plaintiffs in error, for the reason that the court instructed the jury "that in actions of trespass to try title it is incumbent upon the plaintiff to show title in himself, and until this is shown the defendant in possession has the right to remain in possession," and thereby made it necessary for the jury to determine whether Hutchins had in fact purchased the land from Denson.

This did not correct the erroneous charges given, for the court had in effect charged the jury that certain things, which could not legally have that effect, were to be taken as sufficient proof of that fact.

If notice to defendant in error did not exist in her chain of title, and was important, constructive notice is given by the deed from the heir of Denson executed to Rayburn, under whom appellants claim, on December 4, 1863, and recorded on July 18, 1866; the deed under which she claims having been executed on the 10th of May, 1870.

For the error of the court in giving the charges herein referred to, and in refusing to give the second instruction asked by the appellants, the judgment of the district court is reversed and the cause is remanded.

REVERSED AND REMANDED.